IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID MCNEE, DEBORAH CARR, | : | |
| EDINELIS VEGA | : | No. 3:19-cv-35 |
| Plaintiffs, | : | |
| Individually and on behalf of all | : | |
| other persons similarly situated, | : | January 16, 2019 |
| | : | |
| and | : | |
| | : | |
| IDA DAVIDSON, TERRILYNNE | : | |
| TRUDEAU, MATTHEW IBRAHIM | : | |
| Plaintiffs, | : | |
| Individually and on behalf of all | : | |
| Other persons similarly situated | : | |
| v. | : | |
| | : | |
| RODERICK BREMBY, | : | |
| in his official capacity as | : | CLASS ACTION |
| Commissioner of the State of | : | |
| Connecticut Department of Social Services | : | |
| Defendant, | : | |
| and | : | |
| | : | |
| VEYO, A SUBSIDARY OF TOTAL | : | |
| TRANSIT, INC. | : | |
| Defendant. | : | |

AMENDED COMPLAINT

I.     INTRODUCTION AND BACKGROUND

1.     Plaintiffs file this suit on behalf of themselves and other indigent similarly situated Connecticut residents to obtain the medical care they desperately need and which they are entitle to under the law.   Defendants are obligated to provide Connecticut's Medicaid enrollees who need transportation to medical appointments non emergency medical transportation (NEMT).   Defendants have not done this for all enrollees reliably.   This failure has

1

deprived these residents of their ability to access their medical providers.  Plaintiffs' needs range from routine primary care to visits with specialists to life saving interventions.    In Connecticut, the program is administered by the Department of Social Services (DSS or the Department). DSS contracts with Veyo, a subsidiary of Total Transit, Inc. (Veyo) to broker these services.

2.      The Medicaid program provides transportation to all Medicaid covered services to ensure that there is meaningful access to those services.   NEMT is a critical component of the medical care of Plaintiffs and many of Connecticut's most vulnerable residents.  NEMT ensures a continuity of care by providing a stable, reliable means of transportation to all Medicaid covered nonemergency services. Without an adequate NEMT system, Plaintiffs and members of the proposed class cannot access critical medical care, to which they have a right by law, putting the life and health of those individuals at risk.

3.      Under the current NEMT system, Medicaid recipients request medical transportation to their medical appointments through DSS' contractor Veyo.  The mode of transportation provided is determined by the health, ability, or disability of a recipient.  DSS provides some recipients with bus passes where appropriate; however, it must provide other recipients with transportation via taxicabs, wheelchair vans, or ambulances where individuals have a medical reason that limits their ability to travel on public transit or there are no other transportation options available to the recipient.

4.      Each of these individuals relies on NEMT to get to their appointments so they can access and maintain treatment vital to the treatment of their disabling conditions as well as access providers of routine care to treat their overall health. NEMT is a necessary component to healthcare under Medicaid, as it is the only means of transportation for Plaintiffs and members of the proposed class to access their medical appointments due to their indigence and medical

conditions.  The failure of the current NEMT system has resulted in Plaintiffs missing necessary medical appointments with detrimental affect on their health and well-being.

5.       Despite this critical need, DSS has failed to ensure that it is providing a reliable NEMT system to Connecticut residents eligible for –and in desperate need of – NEMT services. Since January 1, 2018, DSS has failed to reliably provide NEMT for Medicaid recipients, despite scheduling their transportation as instructed by DSS, resulting in missed appointments, loss of medical care, and loss of access to treatment.  In some cases, the NEMT system has caused the wrong mode of transportation to arrive for the transport of a Medical recipient, e.g a taxicab arrives in response to the member's request for a wheelchair van. Even in cases in which an individual's transportation error has been corrected for an appointment or two, the individual has a high likelihood of experiencing that problem again.  DSS' failure to ensure adequate transportation is compounded by its failure to provide any guidance to Plaintiffs regarding whom they should contact for help when their transportation fails to arrive.

6.       Most recently Plaintiffs have scheduled a ride with the Defendants for their medical appointment in a timely fashion, received a confirmation call the night before their appointment from Defendants,  and on the day of the appointment-received a call from the Defendants in which they are told, "We were unable to find a transportation provider to accommodate your request, you will have to reschedule you medical appointment."  Some individuals have asked for written notice explaining why they are not getting their ride. (an unnecessary step).  None of the individuals received a written notice explaining why the ride they were told they would receive was being denied.  Defendants have failed to provide adequate written notice to NEMT participants explaining why DSS did not give them what they requested and what they were granted, and did not make them aware of their right to a hearing to appeal the

decision and in some instances, receive aid pending a hearing as required by law.  A hearing is a Medicaid recipient's opportunity voice their aggrievement and to ensure DSS provides adequate NEMT so they and members of the proposed class can get to their appointments.

7.     Many attempts have been made to resolve the problems with the NEMT system over the last year.  The Medical Program Oversight Council of Connecticut which has advisory oversight over the Medicaid program held several meetings which Veyo and DSS attended, one devoted to this issue.  From this meeting, two additional subgroups were charged with resolving the issues, workgroup consisting of hospitals, providers, legislators, advocates, consumers, and others, and another legislative committee.  While some gains were made, the failures have persisted.  Individual advocacy has been futile as the problems are of a systemic nature.

## II.     PRELIMINARY STATEMENT

7.     This case challenges the lack of due process protections for Medicaid recipients in Connecticut when DSS, through its agent Veyo, denies, reduces, suspends or terminates their Medicaid funded NEMT services.

8.     Individual Plaintiffs McNee, Carr, and Vega are Connecticut residents who receive medical assistance through Connecticut's Medicaid program and bring this action seeking declaratory and injunctive relief because the Defendants violated and continue to violate their rights under the Due Process Clause of the United States Constitution[1] and the Medicaid Act[2].

---

[1] U.S. Const. amend. 14

[2] 42 U.S.C. 1396a (a)(3)

9.     The violations of law and the illegal reductions of service suffered by Plaintiffs McNee, Carr, and Vega, are typical of similar violations suffered by thousands of other Medicaid recipients in Connecticut who rely on NEMT.

10.     The Plaintiff subclass, like the primary class, has been repeatedly denied due process, and in addition has not had their disabilities accommodated.

11.     This Plaintiff subclass challenges the persistent failure or refusal of DSS, acting through its agent Veyo, to accommodate the transportation needs of the proposed Plaintiff subclass in violation by of the Americans with Disabilities Act.

12.     Plaintiffs Davidson, Coleman, Trudeau, and Ibrahim are members of the primary class, but also are the named plaintiffs of the proposed subclass.

13.     The Plaintiff subclass consists of members of the primary Plaintiff class who, due to their disability, are unable to travel using public transit, and require specialized transportation due to their disabilities, and whose request for NEMT service was denied, reduced, suspended, or terminated without adequate written notice explaining why.

14.     Accordingly, Plaintiffs McNee, Carr, and Vega bring this action on behalf of themselves as individuals and all others similarly situated, to challenge the Defendant Commissioner policies and practices of failing or refusing to provide notice to members of the proposed class when their requests for NEMT are denied, reduced, suspended, or terminated in violation of the Medicaid Act and the  U.S. Constitution.

15.     In addition, subclass Plaintiffs Davidson, Coleman, Trudeau, and Ibrahim bring this action on behalf of themselves and all others similarly situated, to challenge the Defendant Commissioner's discriminatory policies and practices of failing or refusing to provide NEMT services to accommodate each recipients' disability  in violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

16.     Plaintiffs McNee, Carr, Vega, and the proposed Plaintiff class seek declaratory and injunctive relief from the Court to compel the Defendant Commissioner to enact, implement, and enforce ongoing, statewide, systemic, policies and practices to ensure adequate, timely, and effective notice is afforded to Plaintiffs and all members of the proposed Plaintiff class when NEMT services are denied, reduced, suspended, or terminated, as required by 42 U.S.C. § 1396a(a)(3), 42 C.F.R. §§ 431.206(b) & (c)(2).

17.     Subclass Plaintiffs Davidson, Coleman, Trudeau, Ibrahim, and proposed subclass members seek declaratory and injunctive relief from the Court to compel the Defendants to desist discriminatory practices and enact, implement and enforce ongoing, statewide, systemic policies and practices to ensure equal treatment of all Medicaid recipients in need of NEMT services, regardless of the mode of transportation required to accommodate their specific disabilities, as required by 42 U.S.C. § 12132, 28 C.F.R. § 41.51(a), 28 C.F.R. §§ 35.130(b)(1)(i)-(iii), and 28 C.F.R. § 41.51(b)(1)(i).

## III.     JURISDICTION

18.     The Court's subject matter jurisdiction over this action is conferred by 28 U.S.C. § 1331.

19.     Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure.   Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.   Redress of violations of the Plaintiffs' rights secured by the U.S. Constitution is authorized by 42 U.S.C. § 1983.

## IV.     PARTIES

A.      Plaintiffs

1.      Primary Class

   i.   . Plaintiff David McNee is a 59 year old resident of Norwalk, CT.  Mr. McNee

   suffers from Meniere's disease, pulmonary disease, severe Post Traumatic Stress

   Disorder, and several other conditions.

   ii.  Plaintiff Deborah Carr is a 59 year old resident of New Haven, CT.  Ms. Carr has

   Freidreich's Ataxia, a genetic, progressive, neurodegenerative, movement disorder;

   scoliosis; Post Traumatic Stress Disorder; hearing loss; respiratory failure; suprapubic

   catheter; and several other serious conditions.

   iii.  Plaintiff Edinelis Vega is a 31 year old resident of Bristol, CT.  She suffers from

   fibromyalgia, degenerative arthritis, and has a pseudotumor in her head.

2.      Subclass

   i    Plaintiff Ida Davidson is a 90 year old resident of Norwalk, CT.  She is unable to

   walk or use a wheelchair due the effects of a stroke.

   ii.  Plaintiff Ernestine Coleman is an 83 year old resident of Stamford, CT.  She is

   disabled due to dementia, and the effects of a stroke

   iii.  Plaintiff Matthew Ibrahim is a 51 year old resident of Norwich, CT. He is

   disabled due to chronic heart failure, chronic obstructive pulmonary disease and

   anxiety.

   iv.  Plaintiff Terrilynne Trudeau is a 56 year old resident of Terryville, CT.  She

   suffers from  lymphedema, hypoxemia, sleep apnea, major depression, chronic

   obstructive pulmonary disease, and pulmonary hypertension.

B.      Defendants

1.      Defendant RODERICK BREMBY is Commissioner of the Department of Social Services of the State of Connecticut, the single state agency responsible for the administration of the Medicaid program, including the NEMT benefits Plaintiffs are entitled to receive. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10; Conn. Gen. Stat. § 17b-2(6).  He serves statutorily at the pleasure of the Defendant Governor. Conn. Gen. Stat. § 4-6. Brokerage of NEMT is contracted to Veyo, a subsidiary of Total Transit, Inc. for a three-year term, which began on  January 1, 2018.  DSS contracts Veyo to perform a function within the specific parameters of the Medicaid program, and subject to the oversight of the Defendant.  Veyo's extremely close nexus to the State, gives its actions the force of state action. See Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308, (2d. Cir. 2003).

2.      Defendant Veyo, a subsidiary of Total Transit, Inc., is the contractor for the brokerage of NEMT services through December 31, 2020.  As stated in paragraph 13, *supra,* Total Transit, Inc, through its subsidiary Veyo, is a state actor and subject to the same obligations as its co-Defendant.

## V.     CLASS ACTION ALLEGATIONS

20.      Plaintiffs are impoverished persons who sue on behalf of themselves and all others similarly situated, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

21.      The class is defined as follows:

All Connecticut residents who receive, or who in the future will have their non emergency medical transportation Medicaid benefits denied, reduced, suspended, or terminated without receiving adequate written notice explaining the reason for the change or denial and information about one's right to appeal and how to appeal.

22.     The proposed Plaintiff Class meets the prerequisites to a class action specified in Rule 23(a) of the Federal Rules of Civil Procedure.

23.     The proposed class is so numerous that joinder of all of its members would be impracticable. Based on Defendant's internal reports for the month of November 2018, there were 554,337 NEMT trips booked, with 358,290 completed.   Based on the same reports 5,725 rides were completed using specialized transportation. (See Attached "DSS Monthly Reporting Package")

24.     There are questions of law and fact common to the proposed class, including the following:

Whether Defendant continues to fail or refuse to provide adequate written notice to the Plaintiffs which provides them with information regarding their right to a fair hearing, and benefits pending when their medical transportation service has been denied, reduced, suspended, terminated, or they received anything other than what was requested in violation of the Medicaid Act and the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

25.     The proposed subclass is:

Members of the primary class who are unable to travel by way of public transit due to their disability and must instead take a specialized mode of transportation such as a wheelchair van, stretcher transport, or other vehicle necessary as an accommodation for their disability.

26.     The proposed Plaintiff Class meets the prerequisites to a class action specified in Rule 23(a) of the Federal Rules of Civil Procedure.

27.     The proposed class is so numerous that joinder of all of its members would be impracticable. Based on Defendant's internal reports for the month of November, 2018, there were 5,725 trips completed using ambulances, bariatric wheelchair vans, and stretcher cars. (See attached "DSS Monthly Reporting Package")

28.     There are questions of law and fact common to the proposed class, including the following:

i.   Whether each of the Plaintiffs has at least one disability, as defined by both the ADA and Section 504 of the Rehabilitation Act of 1973, and implementing federal regulations;

ii.  Whether each Plaintiff  is a "qualified individual with a disability" as defined under the ADA and implementing federal regulations;

iii. Whether each Plaintiff is a "handicapped person" and a "qualified handicapped person" as defined by Section 504 of the Rehabilitation Act of 1973, and implementing federal regulations;

iv.  Whether, as a result of Plaintiffs' physical or mental disabilities, their abilities to engage in at least one of the major life activities are limited, including functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working, as well as limitations in at least one of the usual activities of daily life, such as  traveling, walking, standing in line, attendance at scheduled appointments, concentrating on tasks, interacting with others, effectively communicating by telephone, engaging in employment, and independently obtaining and providing required documentation and completing paperwork required to access DSS benefits, programs and services;

v. Whether Defendant continues to fail or refuse to provide medical transportation that reasonably accommodates the Plaintiff subclass' medical needs, as disabled persons who are eligible for DSS-administered benefits, programs and services, with respect to applying for and maintaining such eligibility;

vi. Whether Defendants continue to deny Plaintiffs' accommodations for their medical transportation needs;

vii. Whether Defendants continue to fail or refuse to provide to Plaintiffs adequate notice of and information regarding nondiscrimination requirements in operation of DSS benefits, programs and services pertaining to applicants and recipients with disabilities; and

viii. Whether Defendants continue to fail or refuse to provided adequate notice to the subclass Plaintiffs which provide them with information regarding their right to file grievances and which reasonably allow them to obtain relief when their rights under the ADA and Section 504 are violated in the administration of DSS benefits,.

29. The four named Plaintiff subclass members' claims are typical of the proposed subclass they seek to represent. They are each unable to travel by public transit due to their disability and have been denied and will likely continued to be denied transportation without adequate written notice.

30. Both named Plaintiff class and subclass will fairly and adequately protect the interests of the proposed classes. In supporting their individual claims, the Plaintiffs will simultaneously advance the claims of absent class members.

31. Plaintiffs' counsel are experienced in poverty law, including Medicaid and public benefits programs. Attorney Hatcher has assisted lead counsel on two previous class litigations

and has the resources and substantive expertise to prosecute this action.  Connecticut Legal Services (CLS) is experienced in class litigation and will support counsel in the prosecution of this case with all of CLS' litigation resources.

32.     Plaintiffs' claims satisfy the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure, in that Defendants have acted on grounds generally applicable to the proposed class, thereby making appropriate final injunctive relief and declaratory relief with respect to the proposed class as a whole.

## VI.     STATUTORY AND REGULATORY SCHEME

A.     Due Process

33.     Since its enactment in 1965 under Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq, Medicaid has provided a crucial health care safety net to millions of Americans and hundreds of thousands of Connecticut residents.

34.     Medicaid is a jointly-funded state and federal program. The program primarily serves low income children and parents, and elderly, disabled and other very low income adults. Medicaid provides a broad array of health and long-term care services including but not limited to physicians' services, hospital services (inpatient and outpatient), laboratory and x-ray services, prescription drugs, family planning services, vision services, and durable medical equipment.

35.     State participation in the Medicaid program is optional. However, a state choosing to participate, and thereby receiving federal matching funds for its Medicaid program, must comply with the requirements of the federal Medicaid Act, and the regulations governing state Medicaid programs.

36.     Connecticut has chosen to participate in the Medicaid program and accepts 50-90% federal matching funds for its program expenditures. Once Connecticut elected to

participate in the Medicaid program, it became obligated to administer its program pursuant to a state plan approved by the Center for Medicare and Medicaid Services ("CMS") that complies with the requirements set forth in the Medicaid Act and its implementing regulations. The provisions of the Connecticut state Medicaid plan are mandatory with respect to all political subdivisions in the state.  42 U.S.C. § 1396a(a)(1).

37.    States must follow the minimum requirements of federal law with respect to both mandatory and optional Medicaid services. 42 U.S.C. § 1396a.

38.    Connecticut is obligated to provide transportation services under federal law.  (42 U.S.C. § 1396a(a)(3); 42 CFR 431.53; 42 C.F.R. §§ 440.169, 441.18.  Connecticut  for transportation, to and from providers of Medicaid covered services via bus tokens, taxi, livery, train, air, wheelchair van, other van transportation, or non-emergency ambulance service. Conn. Agy. Regs. § 17-134d-33.

39.    The state Department of Social Services is the "single state agency" charged with the administration of the Medicaid program in Connecticut.  42 U.S.C. § 1396a(a)(5). The Defendant Commissioner is the head of the Department of Social Services

40.    When a state accepts Medicaid funds, federal law mandates that "[a] State plan for medical assistance must ... provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3), also see, Conn. Gen. Stat. §§ 17b-60, 17b-66.

41.    The Due Process Clause of the Fourteenth Amendment prohibits states from denying, reducing, suspending, or terminating Medicaid without due process of law. This constitutional right includes the right to meaningful notice prior to the termination of Medicaid

benefits, continued benefits pending a pre-termination hearing, and a fair and impartial pre-termination hearing. U.S. Const., 14th Amend.; see Goldberg v. Kelly, 397 U.S. 254 (1970); 42 C.F.R. § 431.200 et. seq.

**B.      The Medicaid Act**

42.      When states receive Medicaid funds, federal law mandates that "[a] State plan for medical assistance must ... provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3).


**C.      The Americans with Disabilities Act**

43.      Subtitle A of Title II of the ADA extends the mandate for the elimination of discrimination against individuals with disabilities to state and local governments and their instrumentalities and agencies, as "public entities," certain specified non-discrimination obligations against disabled individuals, thus proscribing discrimination against individuals with disabilities with respect to access to public services, thus subjecting the State Medicaid agencies to its requirements.  42 U.S.C. §§ 12131 - 12134.    The Act specifically provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

44.      The ADA specifies that "the term 'discriminate ' includes…utilizing standards, criteria, or methods of administration…that have the effect of discrimination on the basis of disability."   42 U.S.C. § 12112(b)(3)(A).

**D.      Section 504 of the Rehabilitation Act of 1973**

14

45.     Section 504 of the Rehabilitation Act, enacted 17 years prior to the ADA, similarly provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

46.     The Act defines the scope of "program or activity" as including "all of the operations of - a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" 29 U.S.C. § 794(b)(1).

**VII.**     APPLICABLE CONSTITUTIONAL PROVISION

47.     Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, no state may deprive its citizens of a property interest without due process of law. This includes the property interest in a claim for public benefits, Medicaid.

**VIII.**     FACTS

A.     Individual Plaintiff Allegations

1.     Primary Class

        i.  Plaintiff David McNee is a 59 year old resident of Norwalk, CT.  Mr. McNee suffers from Meniere's disease, pulmonary disease, severe Post Traumatic Stress Disorder, Major Depressive Disorder, and several other conditions.  Despite Mr. McNee timely requesting NEMT services, his rides have either not come, or come too late to bring him to therapy appointments four times (October 25 and 30, November

26 and December 17, 2018) and he has never been provided with written notice explaining why his ride was cancelled/denied. Veyo representatives have told him that transportation to specialists is not available, despite such specialists providing Medicaid covered services and residing in the same location as his primary doctor. Mr. McNee, a Medicaid enrollee, is in great risk of jeopardizing his health, as his providers will not schedule additional appointments without reliable transportation.

ii.   Plaintiff Deborah Carr is a 59 year old resident of New Haven, CT. Ms. Carr has Freidreich's Ataxia, a genetic, progressive, neurodegenerative, movement disorder; scoliosis; Post Traumatic Stress Disorder; hearing loss; respiratory failure; suprapubic catheter; and several other serious conditions. She relies on NEMT to get to her medical appointments, of which she has 3-4 a week on average. Ms. Carr is determined to be as independent as she possibly can be, and the failing transportation system is making that very challenging. She has missed numerous appointments- most recently an appointment to obtain a Rogers Pen[3] to aid her in hearing, in particular, being able to hear what her doctors say to her at medical appointments. Defendant's failure to provide adequate NEMT services resulted in Veyo cancelling Ms. Carr's ride the day of her appointment because DSS was unable to accommodate her need for a wheelchair vehicle. Ms. Carr is enrolled in Medicaid. When her transportation has been denied, she has requested a written notice to explain why. The Defendant has not provided her with written notice to this day. Most recently Ms. Carr's appointment was confirmed the evening before her appointment by the

---

[3] A wireless microphone used by those with hearing loss. It connects to one's hearing device and improves one's ability to hear sounds over distances and amongst background noise.

Defendants.  The morning of her appointment she was contacted by the Defendants and told that they were unable to find a provider to accommodate her request for transportation and she would need to reschedule her appointment.

iii.  Plaintiff Edinelis Vega is a 31 year old resident of Bristol, CT.  She suffers from fibromyalgia, degenerative arthritis, and has a pseudotumor in her head.  She relies on NEMT benefits to get to her neurosurgeon, neurologist, neuroopthamologist, pain specialist, and others as her conditions require.  Due to her condition, she is unable to take public transportation, as she has unpredictable episodes of blindness and intractable pain that require periodic hospitalization.  In October of this year, DSS failed to pick her up on two separate occasions. DSS failed to pick her up again in November.  On December 13th, her friend took time off from work to bring her, because Ms. Vega feared not being able to fill her medication and another hospitalization.  Defendant never sent Ms. Vega, Medicaid enrollee a notice explaining why her rides have been cancelled/denied.  She has had several appointments each week and her rides only come on occasion and sometimes most recently she was told she needed to submit a form to show that she is eligible for transportation, even though her condition has not changed, if anything it has declined. During these times, like now, she must scramble to find transportation and if she can't then she must cancel her appointment.  Most recently she was told that her "courtesy rides" had run out and that she will not be given additional rides until her form is completed.   She has not received written notice of this denial for service, and the form has been returned.

2.      Subclass

i.   Ida Davidson is a 90 year old resident of Norwalk, CT.  She is disabled due to atrial fibrillation, and the effects of a stroke. Due to her disabilities, she is bedridden, cannot walk, and is unable to use a wheelchair.  Mrs. Davidson requires an ambulance with stretcher to transport her to medical appointments where her primary care physician and cardiologist monitor her condition.  On November 16, 2018, Ms. Davidson's daughter, Sandra Moorer, received phone confirmation of her mother's transportation scheduled for the next morning.  On November 17, 2018, the transportation did not arrive. Veyo representatives told Mrs. Moorer that they were denying her ride because no transportation providers were able to accommodate her. She did not receive any written notice of this change.  By phone, Veyo representatives instructed her to reschedule the appointment and book a new ride. Veyo told her to contact them a few days in advance of the next ride to confirm that transportation had been secured, a procedure not required of any Medicaid members and a procedure that has not worked when other members *have* tried it..  The lack of any assurance of the next ride arriving as requested, caused further distress given the high likelihood her ride might not arrive.

ii.  Ernestine Coleman is an 83 year old resident of Stamford, CT.  She is disabled due to dementia, and cannot walk due the effects of a stroke.  Due to her disabilities, she is housebound and requires an ambulance with stretcher to transport her to her to her medical appointments.  In June 2018, Veyo cancelled transportation to her primary care provider several times due to the unavailability of transportation providers, delaying her medical treatment by three weeks.  On December 27, 2018, Veyo again cancelled her transportation due to an inability to accommodate her

medical needs.  Mrs. Coleman never received written notice regarding any of these changes.  Mrs. Coleman's eligibility for continued home nursing services depends on regular evaluation by her physician.  If her physician is unable to evaluate her, these services may be inappropriately discontinued, leaving her without the care she needs to keep her healthy and living at home, causing her great distress.

iii.  Plaintiff Matthew Ibrahim is a 51 year old resident of Norwich, CT. He is disabled due to chronic heart failure, chronic obstructive pulmonary disease and anxiety.   Due to his heart condition, he experiences significant swelling, fluid retention in his legs and severely reduced mobility.  As a result, he uses a bariatric wheelchair.  To accommodate his bariatric wheelchair, specialized vehicles are necessary to transport him to his cardiologist, pulmonologist, psychiatrist, behavioral health clinician and primary care physician.   On December 3 and December 13, 2018, and on at least two other occasions throughout 2018, Veyo failed to send Mr. Ibrahim's requested transportation, despite Mr. Ibrahim confirming his transportation the prior evening.  Mr. Ibrahim called Veyo after each missed ride, and Veyo representatives informed him that no transportation providers were available to take him to these appointments.  He never received written notice of these cancellations/denials.  Mr. Ibrahim is at risk of severe complications of his conditions and even hospitalization when his medical providers are unable to monitor his health.

iv.  Terrilynne Trudeau is a 56 year old resident of Terryville, CT.  She requires regular treatment for lymphedema, and numerous other serious conditions. Lymphedema is the abnormal collection of excess fluid typically expelled from the body by the lymph system.  A person with malfunctioning lymphnodes is left without

protection from harmful fluids if left untreated, in addition to rendering the individual immobile. The most effective treatment for lymphedema necessarily requires that one have reliable transportation; the patient is wrapped in six layers of high pressure bandaging, which medical providers must remove twenty-four hours later and then replace with new bandaging. The process cannot be interrupted without risking her entering a septic state which can be deadly, for which she has been previously hospitalized. Ms. Trudeau had her spleen and gallbladder removed making her even more susceptible than some to infection from the untreated lymphedema. She receives Husky insurance and relies on NEMT to transport her in her wheelchair to her medical providers. Ms. Trudeau had eight appointments scheduled to receive this treatment and her transportation cancelled for seven of them. She did not receive written notice about any of the cancellations/denials. The providers will not initiate treatment without assurance that she will have reliable attendance. Currently the Defendants will not schedule her transportation because they would like Ms. Trudeau to submit a form, it took her several calls to learn this and she to date has not received a written notice explaining why she is being denied transportation.

B.    Systemic Fact Allegations

Since January 1, 2018 the Defendant Commissioner, through the Defendant Contractor has failed to provide, on an ongoing basis, adequate, timely or effective notice to members of the proposed class as required by law, including where their requests for NEMT are denied partially denied, reduced, suspended, or terminated

48.    Plaintiffs and the proposed class have no adequate remedy of law and are being irreparably harmed by the Defendants' actions.

**IX.**    CLAIMS

A.    FIRST CAUSE OF ACTION: DUE PROCESS

49.    Paragraphs 1 through 48  are incorporated by reference as if fully stated herein.

50.    At all times relevant herein, Defendants were acting under color of statutes, ordinances, regulations, custom, or usage of the State of Connecticut.

51.    Defendants' actions in failing or refusing to in failing or refusing, upon denials of service, to provide notice of the basis for denial and appeal rights of the individual through DSS or Veyo violates proposed Plaintiff class members' rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is actionable pursuant to 42 U.S.C. § 1983.

B.    SECOND CAUSE OF ACTION: THE MEDICAID ACT

52.    Paragraphs 1 through 51  are incorporated by reference as if fully stated herein.

53.    At all times relevant herein, Defendants were acting under color of statutes, ordinances, regulations, custom, or usage of the State of Connecticut

54.    Defendants' practices and procedures alleged herein violate the Medicaid Act by failing to provide an opportunity for a fair hearing before the state agency to any individual whose claim for Medical Assistance is denied or not acted upon with reasonable promptness.

55.    Defendants have acted and continue to act under color of state law, and Plaintiffs do not have an adequate remedy at law.

56.    These violations , which have been repeated and knowing , entitle Plaintiffs to relief under 42 U.S.C. § 1983 and 42 U.S.C. § 1396a(a)(3) of the Medicaid Act.

C.    THIRD CAUSE OF ACTION: THE AMERICANS WITH DISABILITIES ACT – DISCRIMINATORY METHODS OF ADMINISTRATION

57.     Paragraphs 1 through 56 are incorporated by reference as if fully stated herein.

58.     DSS and Veyo/Total Transit are "public entities" within the meaning of the ADA, 42 U.S.C. § 12131(1)(A), (B), and U.S. Department of Justice implementing regulations, at 28 C.F.R. § 35.104.

59.     Plaintiffs Davidson, Coleman, Trudeau and Ibrahim and each absent member of the proposed subclass has at least one "disability," as that term incorporates  having a physical or mental impairment that substantially limits one or more of the major life activities of such individual, as defined under the ADA at  42 U.S.C. § 12102(2) and 28 C.F.R. § 35.104.

60.     The Plaintiffs and each absent member of the proposed subclass is a "qualified individual with a disability" as defined under the ADA at  42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104, as an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by DSS.

61.     These violations by the Defendants have been willful and knowing and entitle the Plaintiffs to damages under the Americans with Disability Act, Title II, by failing or refusing to cease discriminatory policies and practices once such policies and practices were known to Defendants.

D.      THIRD CAUSE OF ACTION: SECTION 504 OF THE REHABILITATION ACT

62.     Paragraphs 1 through 61 are incorporated by reference as if fully stated herein.

63.     DSS and in turn Total Transit, are a "recipients" of "federal financial assistance," as defined by Section 504 of the Rehabilitation Act of 1973 and by implementing regulations promulgated by the U.S. Department of Justice, the U.S. Department of Health and Human

Services, and the U.S. Department of Agriculture, thereby rendering both subject to Section 504. 29 U.S.C. § 794(b)(1); 28 C.F.R. § 41.3(d), (e); 45 C.F.R. § 84.3(f), (h); 7 C.F.R. § 15b.3(f), (g).

64.     The administration by DSS of the TFA, Food Stamp and Medicaid programs including NEMT, which  are funded in part with federal financial assistance, constitute "programs or activities" subject to Section 504 of the Rehabilitation Act of 1973.  29 U.S.C. § 794(b)(1).

65.     Plaintiffs Davidson, Coleman, Trudeau and Ibrahim and each absent member of the proposed Plaintiff subclass has at least one "disability," as that term incorporates having a physical or mental impairment that substantially limits one or more of the major life activities of such individual, as defined under Section 504 of the Rehabilitation Act of 1973, at 29 U.S.C. § 705(9)(B), (20)(B).

66.     These violation by the Defendants have been willful and knowing and entitle the Plaintiffs to damages under Section 504 of the Rehabilitation Act of 1973 by failing or refusing to cease discriminatory policies and practices once such policies and practices were known to Defendants.

67.     Plaintiffs Davidson, Coleman, Trudeau and Ibrahim and each absent member of the proposed Plaintiff subclass is a "handicapped person," as that term incorporates having a physical or mental impairment that substantially limits one or more of the major life activities of such individual, pursuant to the Section 504 implementing regulations of the U.S. Departments of Justice, Health and Human Services, and Agriculture.   28 C.F.R. § 41.31; 45 C.F.R. § 84.3(j), (l); 7 C.F.R. § 15b.3(i), (j), (k).

68.     Plaintiffs Davidson, Coleman, Trudeau and Ibrahim and each absent member of the proposed Plaintiff subclass is a "qualified handicapped person," as that term incorporates a

handicapped person who meets the essential eligibility requirements for the receipt of services, pursuant to the Section 504 implementing regulations of the U.S. Departments of Justice, and Health and Human Services.   28 C.F.R. § 41.32; 45 C.F.R. § 84.3(j).

****************************

****************************

PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

A.      Assume jurisdiction of this matter;

B.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) with

respect to the proposed class and two subclasses;

C.      Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201 and Fed. R. Civ. P.

declaring that the Defendants have violated and continue to violate Plaintiffs' rights under

federal law, including the Due Process Clause of the Fourteenth Amendment, the Medicaid Act,

42 U.S.C. § 1396a(a)(3)

Preliminarily and permanently enjoin the Defendants to:

1. Provide timely and adequate written notice as required by the federal Medicaid

Act and the Due Process Clause of the Fourteenth Amendment;

2. Accommodate transportation needs of people unable to travel by public transit due to

their disability in compliance with the Americans with Disabilities Act and Sec. 504 of the

Rehabilitation Act of 1973

3. Enter temporary, preliminary and permanent injunctive relief, pursuant to 28 U.S.C. §

2202 and Fed. R. Civ. P. 65, requiring Defendant to comply with the Americans with

Disabilities Act and Section 504 of the Rehabilitation Act of 1973 and the implementing

federal regulations of both Acts, by ordering Defendants, their agents and employees to

cease denying, reducing, suspended, or terminating NEMT services without adequate

written notice and/or failing to provide accommodations for those in need of such for their

NEMT services.

4.Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 12205

(ADA); 29 U.S.C. § 794a(b) (Section 504);  and 42 U.S.C. § 1988 (enforcement of due

process under 42 U.S.C. § 1983);

5.Retain jurisdiction over this action to ensure Defendants' compliance with the mandates

of the Court's Orders

 6.        Award money damages against DSS for willful violations of the ADA  in the

amount of $5,000,000

7.Award money damages against Veyo in the amount of $28,000,000

8.Order such other, further, or different relief as the Court deems equitable and just.


                              PLAINTIFFS

                    BY:     /s/ Kristen Noelle Hatcher
                            Kristen Noelle Hatcher (ct27002)
                            Connecticut Legal Services, Inc.
                            16 Main Street
                            New Britain, CT 06051
                            (860) 357-9308
                            Khatcher@connlegalservices.org



                    By:     /s/ James S. Haslam
                            James S. Haslam (ct27296)
                            Connecticut Legal Services, Inc.
                            125 Eugene O'Neill Drive, Suite 120
                            New London, CT 063720
                            (860)271-7312
January 16, 2019            jhaslam@connlegalservices.org

<u>CERTIFICATION</u>

I hereby certify that on January 16, 2019, the foregoing Complaint was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

<u>/s/ James S. Haslam</u>

James S. Haslam, ct27296